Third case for argument this morning, BNSF Railway Company v. Seats, Incorporated. Ms. Auld, good morning. You may proceed. Good morning, and may it please the Court, Counsel. My name is Mary Ann Auld, and I represent BNSF Railway Company in this appeal. This appeal presents for the Court's review a question concerning the proper preemptive scope of the Federal Locomotive Inspection Act. I'll be referring to it as the LIA. Unlike the question presented to the United States Supreme Court in Napier and in Kearns, the question here is whether the LIA preempts state causes of action when the LIA itself, not state law, provides the standard of care. The language of the LIA, the well-reasoned opinions of the Supreme Court and numerous other courts that have looked at this question, and reliable Congressional intent all should lead this Court to one conclusion. The LIA does not preempt state causes of action for which the Federal Locomotive Inspection Act or the LIA provides the standard of care. Unfortunately, the District Court below came to the opposite and, we believe, incorrect conclusion. In the District Court's judgment, it decided that the claims were preempted and dismissed them on 12B6 grounds. If the District Court's judgment is allowed to stand, locomotive manufacturers will be free to disregard the LIA and violate the LIA with impunity. At the same time, railroads that are left to shoulder all of the expense that results from the manufacturer's LIA violations will have no recourse, not even to enforce the manufacturer's voluntary contractual promises to provide LIA-compliant equipment. Why couldn't they enforce the contracts with them? You spurred something there with your last point. Even if you were to continue to lose, why couldn't you make a contract with them that makes them do good stuff? Well, certainly we have, we believe, third-party beneficiary rights to enforce the contract, but the District Court came to the opposite conclusion. Yeah, but don't you buy these seats? These are seats, right? Don't you buy them from these people? Well, the seats are actually purchased by the manufacturer of the locomotive in whole, generally GE in this case. So GE would contract with the seat manufacturer to get the seat and install it. We are the beneficiary of all of that, and certainly our rights are contemplated. Yeah, but you've got a lot of bargaining power. You're all the big railroads. Couldn't you say it? We've got to make a deal with the people who are making the seats. Whether or not we could, Your Honor, in this particular case, it appears, and again, we're at the very beginning of this process, because we filed a complaint. There was a 12B6 motion to dismiss filed, and that's where it ended. In the meantime, you're stuck. Go ahead. In the meantime, we're stuck, yes. What's wrong, though, with, you know, we've got field preemption. What's wrong with the scheme in which the railroads shoulder all the responsibility? There's other examples of that where Congress or states have decided that a particular entity is strictly liable and can't have resort against someone else in the chain. What's wrong with a holding like that here? If that were congressional intent, perhaps nothing, but that's not. And field preemption is interesting, and I think that there has been perhaps some confusion among some of the lower courts that have looked at what field preemption is. Field preemption, as this court knows, occurs when Congress intends for federal law to completely occupy a particular field and therefore withdraws state lawmaking power within that field. This all stems from the Supremacy Clause. And so all that field preemption means is that states cannot enact duties, standards of care, that would be inconsistent with the federal standard that Congress has conceived of and wants to have applied. Now, you want to rely on the federal standard, but are there any elements of these state causes of action that have unique state law requirements? In other words, you want to say negligence per se or something like that based on the federal standard, but I'm wondering whether the causation standard under a state cause of action or some other part of the state cause of action may impose its own requirements that may be inconsistent with federal law. To be clear, in this case, we did not assert a claim for negligence per se. However, I would say that the question of preemption doesn't have to do with some of the specifics that you're talking about with respect to the state cause of action. What preemption gets to is the duty, is the standard of care. And so long as the state cause of action is seeking only to enforce that federal uniform, federal standard, there is no question of preemption. So it doesn't matter, for example, if we're in Minnesota, if Minnesota has a strict causation requirement and, say, Iowa has a very loose causation requirement or whatever. That doesn't matter for purposes of preemption. That's not correct. That's not what is at the heart of the preemption issue, the preemption concept. It is that uniform federal standard that applies across the board, and that is what Congress intended to do in enacting the Locomotive Inspection Act. And we don't have to look far to see that, and we don't have to stretch our imaginations to come to that conclusion. If you go back and look at the history of the Act and what the Act says and you look at the way in which the Supreme Court has interpreted the LIA, that is all very clear from that. The Locomotive Inspection Act itself makes it clear that nothing indicates that Congress has the intent to deprive railroads in this situation of some recourse, to take away a cause of action that is based on the LIA as a standard of care. Congress has indicated in specific terms in the LIA itself that there is a penalty against any person who violates the LIA. And then the LIA's regulations go on to make it even more clear that penalties for LIA violations apply to, quote, any person including but not limited to a manufacturer of railroad equipment. Counsel, how do you respond to Judge Hardiman, the dissenter in the Third Circuit? His real point is that regardless of what we federal courts say, state courts will necessarily inject state law policies into this LIA duty because, as you know, these can be brought to state courts for sure. Absolutely. Yeah, and are brought all the time in some state courts, you're well aware. Yes, sir. So how do you respond? Because that's kind of the policy driving point of that part of his opinion, really most of his opinion. It really is a policy argument, and I don't think that it has any bearing on this situation. Congress has long intended for violations, arguably, of the FELA, the Federal Employers Liability Act, and the LIA, and the SAA, the Safety Appliance Act. All of those can be considered in state court. There is concurrent jurisdiction as between state court and federal court with respect to these federal laws. It has long been that way. In fact, Congress has made an FELA claim that is filed in state court non-removable. That is a very strong indication that Congress intends for state courts to consider all of these concepts. FELA liability potentially, standards that are imposed by the LIA or the SAA, the Safety Appliance Act, and they've never seen fit to change any of that. They're quite comfortable, that all shows, with the fact that state courts are considering actions that deal with federal standards in this field. And they won't sneak in state policy. I'm quoting him all these, as you know, all these times, that they won't sneak in ordinary state policy concerns. I think that that is unrealistic to believe that that's what's going to happen. I think that, as Congress has indicated, it is comfortable with the fact that states very properly apply the law in these contexts. They are comfortable that that is where they are. And if a suit is filed in state court, it stays in state court so that the state court can make those decisions. And what we're really concerned about are not some of the peripheral things, I suppose, that he may be trying to get to. The preemption question is focused on the standard of care. And there is one standard of care, and state courts take very seriously the responsibility to make sure that that standard is applied uniformly. That doesn't mean that every case is going to have the very same outcome. And I think that's one thing that might have influenced the dissent and that certainly influences seats argument here. But I think that what happens when we start talking about the difference in outcome, that is very different than what we're talking about in terms of the uniformity of the regulation. So long as we have one standard that all of the courts are applying, that federal standard that has been articulated in the LIA, any concerns about uniformity go away. It's the standard that makes the difference. And just as in every case, the evidence might suggest a different outcome and lead to a different outcome, that's not where we're concerned when we're talking about preemption. Even though the standard of care is very broad, it's very general. It's very open-ended. Well, I would suggest that it's not as open-ended as you might suggest that it is. But even if it is, that is the standard that Congress has articulated as the federal standard for the Locomotive Inspection Act. And so that's the standard we have. And so long as the courts are applying it uniformly, that's the end of the analysis on that one. Does the result of this end up, again, it's Hardiman's point, Judge Hardiman's point. Yes. Does it end up in direct conflict with Kearns by the time all is said and done? No. The Kearns case and the Napier case are very specific and very limited with respect to what they found. Kearns' express holding was very clear in terms of the fact that the LIA preempts only state statutory and common law duties and standards of care. You know, in the Kearns case, Justice Thomas went through and talked about Napier and what Napier had held. It acknowledged Napier's holding that the LIA was intended to occupy the field and talked about what the field was, the design, the construction, the material of every part of the locomotive and tender and all of its appurtenances. And then went on to say that the Supreme Court concluded that state common law duties and standards of care directed to the subject of locomotive equipment are preempted. If that weren't clear enough, because it focused on state common law duties, court went on and said, Napier's categorical exclusion admits of no exception for state common law standards and duties of care, focused very specifically on the state common law standards of care that are preempted, not the federal standard of care. So there's no way really to get to the true meaning and to the true impact of Napier and Kearns without giving effect to all of the words that the court used. And those words, state common law standards and duties of care, are particularly important here because that is all that is preempted. In Knoedler, Judge Benton, both the majority and the dissent recognized that Kearns and Napier really didn't answer this question. The majority held specifically that Kearns was explicit in holding and only holding that a state may not impose its own duties and standards of care. The dissent really agreed that Napier and Kearns didn't answer this question because it said that the question was whether the court should take the quote next step of holding that the LIA preempts even state law claims based on federal duties. Of course it says the majority guts Kearns. But it doesn't. This is a situation in which, consistent with other precedent from the United States Supreme Court, state causes of action are allowed when we're talking about enforcing a federal standard. And in this case, if you were entitled to proceed, exactly what would be the basis of your claim against the corporation here? Your seat didn't meet what? The standards set forth by the Locomotive Inspection Act. And the Locomotive Inspection Act requires that all parts be in proper condition and safe to operate without unnecessary danger of personal injury. With respect to the seat itself, there are regulations that deal with that particularly that have been enacted pursuant to the LIA and it requires a cab seat to be securely mounted and braced. But the pleading, currently as it stands, asserts a violation of the LIA and at the 12B6 stage, that is sufficient. Well, you know, this may work in this case because we want all seats to be properly mounted. But what happens, again using my earlier example, and this gets to the breadth of the standard. What happens if, in a particular case, Minnesota decides you need a particular type of armrest on a seat? I'm not an expert on what seats are on a locomotive. But, you know, Minnesota decides because you didn't have particular types of armrests and somebody fell off the seat, that that didn't make it safe to operate. And Iowa, in a separate decision, decides, well, we don't need those armrests. It's not necessary to make it safe to operate. Don't we have exactly the problem that we were trying to prevent or the Congress was trying to preempt? If a state comes in either statutorily or through some judicial opinion and adds requirements like you're talking about, those would be preempted because that would be a state standard. But they would hinge it upon the safe to operate language. They would say, look, this seat is not safe to operate without these particular requirements because it's so broad. I mean, I'm kind of with Judge Benton. What do we do about the breadth of the standard here if it creates disparate requirements? With all due respect, this court doesn't do anything about the breadth of that standard. Congress has seen fit to make the standard what that standard is and consistent with its decisions, whether we're talking about Silkwood, whether we're talking about Crane or Tipton or many other cases where there were federal statutes, that the standard was applied through a state cause of action. That's all that we're saying here. And to the extent that the standard is broad, that is what it is. And that is what Congress has determined it to be. And that is the standard that will be applied until Congress decides that it should be something else for preemption purposes. And it's too bad that if that standard leads to different requirements through litigation. If it leads to different requirements, that's one thing. They cannot regulate the requirements because that would be absolutely at odds and preempted by the LIA. But the fact that there may be different outcomes is something that Congress is satisfied with and has not seen fit to change. And frankly, it would not be to a court to change that standard. I have a lot of other things I'd like to talk with you about, but I've only got four minutes, so I'm going to save the rest of my time for rebuttal. Very well. We'll hear from counsel for seats. Mr. Poore, good morning. You may proceed. Good morning, and may it please the court, counsel. I'll begin with two basic points on which we should all agree. First, the LIA, or the LIA, which I'll refer to it as that, has no private right of action. And second, as the Supreme Court told us in the Kearns case, state law, common law actions involving railroad equipment for a locomotive, not anything else but for a locomotive, may not be brought against a manufacturer. So the question is, can these two fundamental points be easily sidestepped by simply piggybacking the LIA claim on top of a state law, common law claim? Well, counsel, now wait, wait. Under Napier, they cannot use a state statute. Like the Minnesota statute requires this, and the Iowa statute can't use that for a claim. And under Kearns, you can't use just general common law state negligence. You have to allege the federal claim and use federal stuff. And I would think a judge wouldn't let you refer to all that state stuff at any time during the proceeding the way that your opponent sets it. So aren't you arguing against a straw man? No, Your Honor, because as Judge Hardiman said in his dissent in Knoedler, if you simply put the LIA claim on top of the state law claim. Well, no, they don't. You can't mention the state law claim, counsel. No, you can't do that under Napier. And I think you've got a false underling there. Go ahead. If you're alleging a state law claim that has a federal overlay that avoids preemption, you've basically, there's not much left of Kearns after that. Because any plaintiff, as was done in this case, can easily just say, I've got my common law claim and we're alleging a LIA claim as part of the standard. Yeah, you've got a Trojan horse argument is what you're arguing, right? So you're just putting the federal claim on top of the. Why isn't this like the Atomic Energy Act? And why isn't it like the Federal Aviation Act? You know the majority opinion. Why isn't it like those where, gosh, as long as they keep talking all federal, they can wink and nod, but they've got to talk all federal. Couple distinctions there. For Silkwood, Abdulla, there's savings clauses which make this much different. And of course, those are not LIA preemption cases, which are field preemption cases. And in this case, when you have field preemption and you have a situation where there's really no getting around it. If you apply this law, it's very easy to get around Kearns. And if that happens, that should tell us that something's wrong. And what it's telling us is that policy arguments that should be debated in Congress have really swallowed up a Supreme Court case. And let's be clear about what these policy arguments mean. What they mean is this, that any railroad worker, any non-railroad worker, any passenger, any bystander, any railroad can bring a common law claim against any manufacturer in state court or federal court about any part of a locomotive. And all you have to do is just tack on the LIA standard, and there you are. And if a century of federal regulation of railroads is going to be unraveled in that way, then that's up to Congress to grapple with all the implications, all the effects on constituents that such a dramatic change would make. I mean, that's what is really at issue here. How are the issues here different from those in the Third Circuit case? How are they different? Well, I think the issues really are very close to the Knoedler case. And our argument is that Judge Hardiman's decision is the one that, as he put it, it represents the logical extension of Kearns. The majority opinion in Knoedler starts off with they're going to look to, quote, strong hints from cases like Tipton, Crane, and Ayers, which do not deal with the LIA preemption at all. And our argument is that if the question is between hints from non-LIA cases and Judge Hardiman's case, which actually, Judge Hardiman's dissent, which actually relies upon the Kearns case and LIA preemption and its logical extension, logic should prevail over strong hints as to non-LIA cases. And the logic is that the Kearns case stands for the proposition that even when there are no other remedies available, in the Kearns case, the plaintiff, the widow of the deceased railroad worker, had no other remedy. The only remedy left was the claim against the manufacturers. And the Supreme Court in that case said, your claim is preempted. And that meant there was no additional remedy for that plaintiff there, even though there was no FELA claim. Well, counsel, the turning point, though, of the dissent is that the state courts will cloak their state law claims in the garb of LIA. And that is a behavioral statement of what we think, how state judges and state courts will behave. And frankly, we don't trust them. That's a we don't trust them. And Judge Jordan and the court say, yeah, we trust them to keep them different. Now, how should we, a court, decide? They're both kind of going on behavioral basis. How should we decide that? Your Honor, I think the starting point is first to make the distinction between express preemption, which applies in cases involving the SAA, and field preemption, which is LIA. And it really requires us to say, and this gets a little abstract, but let's just get very practical about this. What's the substance? The substance here is we're taking a very open-ended federal standard, and it's, quote, is the locomotive in proper condition? Is it safe to operate? And we're going to put that very nebulous federal standard on top of the product liability common law of 50 states. Because we don't trust them to keep them separate, right? No, no. No, we don't trust them to keep them separate. Go ahead. It's not a matter of trust. I don't think it's a matter of trusting state law. We're just saying the reality is that state common law product liability, I mean, it varies all over the map. Every state may have a, for instance, contributory negligence may be handled differently. Or in this case, when you have a statutory violation, I mean, some states may view that as negligence per se. Some may say, no, it's not negligence per se. It's just some evidence of negligence. So when we have a standard, yes, there's this nebulous standard. What standard? What are we talking about? The LEIA standard. In this case, the standard is was the seat manufactured to the requirements that the federal government has imposed? Correct, Your Honor. Why is that so nebulous? Well, because the standard itself gives no guidance as to what it means to be in proper condition or safe to operate. I mean, that's very, very vague. It doesn't say, as Judge Strass was saying, you have to have an armrest or you have to have so many bolts on the seat or anything like that. Surely they've got some regulations on this. This is the federal government, right? Well, but the essence here is that when you apply that standard and it's still a state law claim, and that state law claim can be applied in any number of ways when you're dealing with the federal standard is going to be applied in a state court or in a federal court sitting in diversity because you couldn't remove these claims because they're still state law claims. And what comes with that are all the many permutations of state common law. It's going to vary for all 50 states. And that goes to the very core of what Leah is all about. This is the very definition, a very recipe for patchwork regulation. Each state can apply these federal standards in any number of different ways. And it's not a question of— In other words, a seat that would be considered properly manufactured in Nebraska would not be so held in Texas? We don't know. I mean, that's the whole problem is that it's field preemption, and the idea is that we don't— How did the Third Circuit address that? I should reread it. I've read it several times. Well, the majority's view is that we can look to cases like Tipton or Crane or Ayers where the court has allowed things such as contribution claims under state law, and that has not been a problem. But the problem with that, of course, is, A, it's not the Leah preemption, and they don't address the breadth of field preemption, and what it doesn't do is address the effect of the Kearns decision because I keep coming back to this idea of what's left of Kearns if it can be so easily avoided? And it can be. I mean, as this case shows, all it took in the complaint here was just one paragraph that said, We're going to ask the court to apply the federal standard. And then you get around Kearns. The council state courts have been interpreting the Leah since, what, 1913, right? Right. Okay. Now, why is there such a big change? Why do we not trust them? We've trusted them for over 100 years. Now we don't trust them. And they can't even remove it from there. You're stuck there if you're the defendant. No. It's not a question because the FELA, you can apply it with FELA, and that was part of the context. With FELA, you have an intentional decision by Congress because you want to allow injured railroad workers to have claims, and by allowing FELA to apply there, you're giving the injured workers additional help in proving their claim. And Congress, that was part of the whole idea behind it, is that we're going to tolerate some variation with the FELA. That's different from claims outside of FELA, and if we're going to allow exactly what happens in FELA, that changes it dramatically. What about the Safety Appliance Act? It's been a little while, about 20 years since I've litigated a railroad case, but the Safety Appliance Act contains a lot of requirements, as I recall, that are very similar to the Locomotive Inspection Act, and yet in Tipton and Crane, the Supreme Court says that those causes of action can go forward. What makes the Locomotive Inspection Act, other than this theoretical distinction between express preemption and field preemption, different? Well, that's primary, and I think the other major distinguishing feature, as Judge Hardiman points out in his dissent, is those cases are pre-Kearns, and Kearns is the one case that really focuses on the breadth of the LEIA in current jurisprudence. That makes a big difference. Kearns, again, let's remember, that was a contribution claim by the widow of a deceased railroad worker who had no other remedy, and the court held that there was no remedy. I mean, put it this way. The court in Kearns didn't say, you have no remedy, but if you had only added, or if you'd only tacked on a LEIA standard, you would have had a remedy, and that's something you would think the Supreme Court might have said if they were shutting the courthouse door on the plaintiff in Kearns who had no other remedy. You know, to get back to my original question, are there major differences in your view, even aside from the theoretical distinction between the Safety Appliance Act or the Locomotive Inspection Act? Of course they cover different things, but they're both highly technical statutory schemes, and there's certainly regulations, as Judge Benton points out, on those issues. Are there other distinctions we can make to say that I understand you want to go back to Kearns, but to say that Tipton and Crane are just different? Well, Tipton was different. It involved a railroad worker that was not working in interstate commerce, and really it was a different case altogether. Crane is a case that doesn't have anything to do with preemption. And so what we're talking about in Kearns, though, is the LEIA preemption. And the big distinction between the SAA and the LEIA is that SAA is express preemption, and then you look, and you're right, Your Honor, there are complex statutes in the sense that, and I don't pretend that I could list all the many different permutations, but they do deal with railroads. But we do know that Congress made a decision with the LEIA that it would be treated differently. There's a Locomotive Inspection Act. There's no Box Car Inspection Act. There's no Passenger Car Inspection Act or Gondola Inspection Act. It is special in its own way, and it has been for over 100 years. Maybe the history goes back because it came during the era of steam locomotives, which were a highly dangerous volume. Are we applying a 100-year-old law to diesel locomotives that bear no relationship in terms of safety to the old steam locomotives? If you were the engineer, your left arm burned from the firebox heat and your right arm froze to death and the fireman the same? I think that's a good observation, Judge Woolman. It started out with the Boiler Inspection Act in 1911, and then in 1915 it becomes the— Did Wisconsin try to have canvas curtains to protect its workers? No, no, no, it can't do that. Exactly. But that has been the history of it, and the fact that diesel locomotives came in in the 1940s and 1950s means that's outmoded. That's a policy issue that Congress should change. The essence of it still is the same, is that it's field preemption. We're not talking about a seat. We're not talking about a boiler tube or a safety valve or anything like that. But we're still, whatever it is, whether it's a seat, a boiler tube, whatever, if it's part of the locomotive, what the statute calls the appurtenances or parts, then the key here is, is it part of the physical element of the LEIA? And there's no question here. There's no dispute. This seat is part of the physical element of the locomotive. And if there's an argument to be made, well, maybe we shouldn't have such broad preemption for today's locomotives because they're safer, that's a policy argument, and that's not a distinction the Supreme Court got to in Kearns. I mean, they applied the same kind of preemption they did in Napier in 1926 when there were steam locomotives. So it's an important part of the history, but Congress has not seen fit to change it, and the Supreme Court certainly did not say that that was something that called for distinction. What about Ayers? I'm familiar with that case. I'm skeptical that it says much of anything, but it's a major part of the Third Circuit opinion. There's a whole section on it, and I'm curious to see what your response to the Ayers case is. The Ayers case, first of all, has nothing to do with LEIA preemption, of course, and it dealt with the question. The second issue was whether workers that were injured had their damages allocated between railroad and non-railroad causes. The Supreme Court said no, it doesn't under FELA, and it said, by the way, railroads also have the ability to seek contribution or indemnity against third parties, and it cited just two footnotes. There's footnote 21 in Ayers. It's almost 20. It's a 20-case string cite, and right in there, there's Engvall. And none of those, I mean, except for Engvall, I mean, those cases just deal with the idea that there's contribution claims. But, I mean, and the second reference in Ayers is footnote 23. It's the same idea. It's two cases, and it just stands for the proposition that you can bring a contribution claim within a LEIA action. So it doesn't touch on this. I mean, the idea, the majority in Knoedler says, well, the Supreme Court has endorsed Engvall in Ayers. That reads way too much into what Ayers does with those two footnotes. They do favorably cite it twice. But they don't cite it for preemption. It's not cited for preemption in any way. And Ayers was a FELA case, but does your position essentially take away, I mean, effectively take away contribution and indemnity for any LEIA claims? I mean, isn't that the net effect? Well, that's the net effect of Kearns, yes. Kearns was a contribution claim. And so your argument is Kearns controls over this side statement in Ayers? Absolutely. There's a general statement in Ayers, but Kearns is a contribution claim, and it's a case in which the remedy was extinguished. And just my quick remaining time, I just want to address your point about contracts. Yes, railroads can have contracts, so long as they are not contracts that are repackaged as tort claims and they do not rely upon common law claims such as the third-party beneficiary. They can protect themselves with contracts that are within the four corners. They can have sophisticated parties can say, I want A, B, and C, and if that doesn't happen, then there is a claim. But that is not relying upon state law obligations. It is not a repackaged tort claim as we have here. So that's how railroads can also protect themselves. I see my time has expired. Unless the Court has any further questions. Fair enough. Thank you for your argument. Thank you, Your Honors. The problem with Cease's reading of Kearns is that it ignores the language that the Court used. Napier's categorical exclusion admits of no exception for state common law standards and duties of care. Under Napier and Kearns, the LIA preempts only state law claims for which state law provides the standards and duties of care. That is not the situation that we have here. With respect to the question about the LIA and the SAA, Cease has tried to distinguish Crane and Tipton on the ground that the Safety Appliance Act does not preempt its field in the same way that the LIA does, but that ignores the fact that in both Crane and Tipton, the case involved couplers as part of the train, which the SAA explicitly governs. And so from a preemption perspective, the SAA and the LIA are exactly the same. There's no way to distinguish SAA and LIA based on this, as you say, theoretical distinction between express preemption and field preemption. It just doesn't get them where they want to go. With respect to the whole concept of field preemption, keep in mind that what field preemption does, I know I've said this already, is that it occurs when Congress intends for federal law to occupy the field and withdraws state lawmaking power. That is not what we have here. We have a federal standard that applies across the board. To extend field preemption further than the court did in Napier and Kearns creates federalism concerns by removing states' abilities to govern without any congressional indication that that was the result that it intended. It just is not so. This whole sky is falling. Everyone in the world will try to tack on an LIA violation. The LIA is not so easy. There are specific requirements that have to be met, and in most cases they can't be met. And even if someone were to try to allege it, they would not get very far. For the LIA to apply, the locomotive has to be in use. You have to be able to find a part that was not in proper working condition. Employees generally are always going to go under the FELA. They won't be going under state causes of action. The notion that people are going to come out of the woodwork trying to assert state causes of action with an LIA standard tacked on is just unrealistic. The reason that we have, as the railroad company, a claim that we can make here is because our employee sued us for violation of the LIA, and we had to settle that, and we now seek contribution back against the only party that could make that right. We had to pay under AERS. We had to pay, and AERS makes it very clear that the railroad is responsible in the first instance completely to its employee under the FELA and LIA, but then it is an option for the railroad to go back against the manufacturer, who is the party that is responsible for the violation. And so contribution and indemnity is alive and well. It's just not so that that has gone away after AERS. The issue here is the same as it was in Knoedler. So, Judge Wolman, I do encourage you to go back and take a look at all of the different aspects since I don't have time to go through all of it, to see all the instances where the Supreme Court has allowed in other statutory contexts violations of federal law to be redressed through state causes of action. At the end of the day, what SEEDS is trying to do is to secure immunity for manufacturers at the expense of the railroads. That is something that neither Congress nor the Supreme Court has ever indicated an interest in doing, and to try to disincentivize manufacturers from producing safe equipment is certainly at odds with what the LIA is all about. Thank you, Your Honor. We thank both sides for the arguments in this very interesting case. We will now take it under consideration.